IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| BRAKE PLUS NWA, INC. <br> and WILLIAMS & LAKE, LLC | PLAINTIFFS |
| V.    CASE NO. 5:23-CV-5185 | |
| UNITED STATES DEPARTMENT OF TRANSPORTATION, <br> through Pete Buttigieg in his official capacity as <br> Secretary of Transportation; and NATIONAL HIGHWAY <br> TRAFFIC SAFETY ADMINISTRATION, through Ann Carlson <br> in her official capacity as Acting Administrator <br> of the National Highway Traffic Safety Administration | DEFENDANTS |

## MEMORANDUM OPINION AND ORDER

The Plaintiffs distribute an aftermarket vehicle safety product which they claim will greatly reduce the number of rear-end collisions on our nation's highways. The relevant Government agencies have informed Plaintiffs that their product impermissibly alters the required functionality of a vehicle's factory-installed third brake light. The Government is preparing to notify the Plaintiffs' customers that the product does not comply with Federal Motor Vehicle Safety Standard 108.

Now before the Court is Plaintiff's Motion for Preliminary Injunction (Doc. 5).[1] On December 4, 2023, the Court held a hearing on the Motion and took the matter under advisement. Having considered the matter fully, the Court **DENIES** the Motion for the reasons explained herein.

---

[1] In addition to the Motion and Plaintiffs' Brief in Support (Doc. 6), the Court has also considered the Defendants' Response in Opposition (Doc. 25), and Plaintiffs' Reply (Doc. 29). More recently, Plaintiffs filed a Supplement to the Record updating the Court on the status of pending legislation related to Plaintiffs' product (Doc. 38).

1

## I.  BACKGROUND

Since 2012, Plaintiff Williams & Lake has distributed and sold a product called the "Pulse Module, powered by SAFETY FIRST" to hundreds of car dealerships around the country. Plaintiff Brake Plus NWA has distributed a very similar product since 2013 called the "Brake Plus Module." Since Plaintiffs move for identical relief and their products are so similar, the Court will refer to their products collectively as the "Pulse Module."

The product is an aftermarket pulsating light system that causes a vehicle's factory-installed center-high-mounted stop lamp ("CHMSL") to rapidly pulse when the driver presses the brake pedal. Current federal law requires a factory-installed CHMSL to emit a steady level of illumination when the brakes are engaged. By contrast, when applying the brakes with the Pulse Module installed, the intensity of the CHMSL's illumination is pulsed four times in the first 1.2 seconds before holding steady. The CHMSL remains illuminated throughout the pulsing period, meaning the brake light does not alternate between completely off and on. Instead, it alternates from a brighter luminosity to a dimmer luminosity to create an effect similar to a driver repeatedly pumping the brakes. This effect, according to Plaintiffs, increases highway safety by reducing the incidence of rear-end collisions. *See* Doc. 5-4 (attaching nine studies endorsing the safety benefits of Pulse Module technology).

On July 26, 2023, the United States Department of Transportation ("DOT"), through its National Highway Traffic Safety Administration ("NHTSA"), the federal agency responsible for writing and enforcing the Federal Motor Vehicle Safety Standards, sent Brake Plus NWA and Williams & Lake substantially identical letters asking them to provide contact information for their car-dealership customers. *See* Docs. 5-1, pp. 102–04 & 5-2,

2

pp. 6–8. The letters warned that if Plaintiffs did not provide the requested information by the agency's deadline, they could face fines of up to $26,315.00 per day until they fully complied.[2] The letters also explained that NHTSA intended to send Plaintiffs' customers "Compliance Notification Letters" that would inform them of the agency's view that altering the functionality of a factory-installed CHMSL with the Pulse Module violated the "make inoperative" provision of the National Traffic and Motor Vehicle Safety Act ("Vehicle Safety Act") at 49 U.S.C. § 30122(b). This provision prohibits manufacturers, distributors, dealers, rental companies, and motor vehicle repair businesses from "knowingly mak[ing] inoperative any part of a device or element of design installed on or in a motor vehicle or motor vehicle equipment in compliance with an applicable motor vehicle safety standard." *Id.*

The motor vehicle safety standard in dispute in the instant case is Federal Motor Vehicle Safety Standard 108 ("Standard 108"), which is codified at 49 C.F.R. § 571.108. It specifies the national requirements for original and replacement vehicle lights or "lamps." *See id.* at Tables I-a to I-c. Its stated purpose is

> to reduce traffic accidents and deaths and injuries resulting from traffic accidents, by providing adequate illumination of the roadway, and by enhancing the conspicuity of motor vehicles on the public roads so that their presence is perceived and their signals understood, both in daylight and in darkness or other conditions of reduced visibility.

*Id.* at S2. "Stop lamps" are required to "giv[e] a steady light to the rear of a vehicle to indicate a vehicle is stopping or diminishing speed by breaking." *Id.* at S4. According to

---

[2] Plaintiffs do not suggest that the agency's request for customer information (or threat of daily fines) violates the APA and should be enjoined.

3

Standard 108, all stop lamps for passenger cars, multipurpose vehicles, trucks, and buses must be "[s]teady burning." *Id.* at Table I-a.

Plaintiffs' counsel agreed during the motion hearing that NHTSA had not changed its position regarding how the "steady-burning" requirement was to be interpreted. *See* Doc. 33, pp. 20–22. The agency issued various opinion letters over the past several decades[3] in response to inquiries about pulsing brake-lamp products, *see* Doc. 25, pp. 16–17, and in every case, NHTSA emphasized the dictionary definition of "steady," which is "showing little variation or fluctuation; stable; uniform." *See id.* at p. 38 (citing Steady, *Merriam-Webster.com Dictionary*, https://www.merriam-webster.com/dictionary/steady [https://perma.cc/FS68-7RW5]).

What changed more recently was NHTSA's interest in enforcing the "steady-burning" requirement, particularly with respect to aftermarket pulsing brake systems. In response, Plaintiffs have been lobbying Congress and the agency to create an exception to the steady-burning requirement for the Pulse Module. But as of now, Congress has not changed the law, nor has NHTSA wavered from its plain-meaning interpretation of Standard 108.

Plaintiffs ask the Court to enjoin NHTSA from sending the Compliance Notification Letters to their dealership customers until this case is decided on the merits[4] or until

---

[3] These opinions are publicly available on the agency's website at https://www.nhtsa.gov/interpretations.

[4] NHTSA agreed to hold off on sending the Compliance Notification Letters to Plaintiffs' customers pending the Court's ruling on the Motion for Preliminary Injunction. *See* Doc. 24.

Congress passes a law that expressly authorizes the installation of pulsing brake lights.[5] They fear that as soon as the dealerships receive the warning letters from NHTSA, they will immediately stop purchasing the Pulse Module, which will destroy Plaintiffs' multi-million-dollar businesses[6] and deprive the public of the safety benefits of the product.

NHTSA responds that the Court lacks jurisdiction because Plaintiffs lack standing and the case is not ripe. With respect to standing, NHTSA contends that sending the Compliance Notification Letters to Plaintiffs' customers would result in a speculative injury rather than an injury in fact. NHTSA insists "there is no reason to suspect that customers will fear such drastic consequences" as costly and time-consuming agency enforcement actions if they disregard the letters and continue installing the Pulse Module. (Doc. 25, p. 26). NHSTA assures the Court and Plaintiffs that it "has taken few enforcement actions related to the 'make inoperative' provision' of the Vehicle Safety Act" over the years, so Plaintiffs' customers should not worry—at least not yet—that the agency will follow through on its warnings. *Id.* Relatedly, NHTSA argues that Plaintiffs' lawsuit is not constitutionally ripe because it deals with contingent future events, namely, future enforcement actions against Plaintiffs' customers.

---

[5] Plaintiffs advise that sixty-two members of Congress are co-sponsoring legislation that seeks to create a safe harbor under the law for pulsing brake-lamp systems. *See* Doc. 38, p. 8.

[6] Since 2012, Plaintiffs collectively have generated gross sales in excess of $100,000,000 from the distribution of this product. *See id.* at ¶ 34; Doc. 5-2, Decl. of NWA CEO Michelle Hanby at ¶ 7. They estimate that their car-dealership customers generated annual sales from the Pulse Module totaling approximately $122,000,000 in 2022 and $100,000,000 in the first nine months of 2023.

Next, NHTSA contends that its plan to send Compliance Notification Letters to Plaintiffs' customers does not qualify as final agency action under the APA. In NHTSA's opinion, the letters will not give rise to any legal action. Instead, the letters merely "express[ ] NHTSA's view on a legal question without any legal consequences for the Plaintiffs, dealerships, or anyone else." *Id.* at p. 33. Accordingly, NHTSA posits that even if Plaintiffs have Article III standing to sue on a ripe claim, the APA does not permit the Court to weigh in on the agency's plan of action, as it has not made any final decisions regarding the enforcement of the Vehicle Safety Act or its regulations.

Finally, in the event that the Court reaches the merits of Plaintiffs' claims under the APA, NHTSA requests that the Motion for Preliminary Injunction be denied. The agency insists that its interpretation of Standard 108 is rational and predictable, rather than arbitrary and capricious, and it points out that its stated mission is to interpret and enforce the plain language of the regulation—not legislate an exception for Plaintiffs' product.

## II.  DISCUSSION

### A.  Standing and Ripeness

Constitutional standing requires three elements: 1) an injury in fact, 2) a causal connection between the injury and the conduct complained of, and 3) a likelihood that the injury will be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Upon consideration of the three elements, the Court finds that Plaintiffs have standing to sue. The injury in fact that they have identified—the destruction of their business—is not merely speculative; it is likely that Plaintiffs' customers will heed NHTSA's warning to stop installing the Pulse Module rather than face financial penalties. Moreover, there is a causal connection between the agency sending the Compliance

Notification Letters and the resulting injury to Plaintiffs' businesses. Finally, on the issue of redressability, granting Plaintiffs' requested injunction would likely prevent the loss of business that would follow NHTSA's warning letters.

Next, with respect to whether Plaintiffs' claim is ripe for review, the Eighth Circuit has offered the following guidance:

> Ripeness is a "closely related doctrine" of standing that "originates from the same Article III limitation [on subject matter jurisdiction]." *Sch. of the Ozarks, [Inc. v. Biden]*, 41 F.4th [992,] 997 [(8th Cir. 2022)] (citing *Susan B. Anthony List [v. Driehaus]*, 573 U.S. [149,] 157 n.5 (2014)]). The ripeness doctrine "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Id.* at 997–98 (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148–49 (1967)). "[T]he complainant must show both 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration'" "[t]o demonstrate that an alleged dispute is ripe for review." *Id.* at 998 (quoting *Abbott Lab'ys*, 387 U.S. at 149). A case that "would not benefit from further factual development and poses a purely legal question not contingent on future possibilities . . . is fit for judicial decision." *Id.*

*Religious Sisters of Mercy v. Becerra*, 55 F.4th 583, 608 (8th Cir. 2022).

The Court understands that "fitness" in the context of a ripeness inquiry "depends on whether a case needs further factual development," while "[h]ardship requires that the plaintiff has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged statute or official conduct." *Hughes v. City of Cedar Rapids*, 840 F.3d 987, 993 (8th Cir. 2016) (internal quotation marks and citations omitted). A case is therefore unripe if it is dependent on "'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Trump v. New York*, 592 U.S. 125, 131 (2020) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).

7

Though not an easy question, the Court finds that Plaintiffs' claim is ripe in the jurisdictional sense of the term. As previously stated, the injury Plaintiffs face is the likely destruction of their businesses once their customers are notified that the Pulse Module does not comply with federal law. NHTSA's counsel stated during the hearing that the Compliance Notification Letters had been drafted for the most part (though the wording was not final) and that the agency definitely intended to send them. *See* Doc. 33, pp. 40–41. Thus, the issues that Plaintiffs place before the Court are ripe: They are clear and comprehensible, pose purely legal questions stemming from official agency conduct, and will not benefit from further factual development.

## B. Final Agency Action

The Court's authority to review the conduct of an administrative agency is limited to cases challenging "final agency action." 5 U.S.C. § 704. According to the Supreme Court's decision in *Bennett v. Spear*, two conditions must be satisfied for agency action to be "final" under the APA:

> First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. *And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.*"

520 U.S. 154, 177–78 (1997) (emphasis added).

Plaintiffs claim that they filed this lawsuit to stop NHTSA from "blanket[ing] the marketplace with a declaration that installation of the pulsating light systems violates [Standard 108]." (Doc. 29, p. 10). This "declaration"—which NHTSA plans to share with Plaintiffs' customers—is the final agency action that Plaintiffs ask the Court to enjoin.

8

Even if the Court assumes the first prong of *Bennett* test above has been satisfied—in that NHTSA's decision to send out Compliance Notification Letters is not tentative, but the consummation of the agency's final decision-making process signaling its intent to move forward with enforcement actions—the second prong of the test has not been satisfied. The Eighth Circuit explained in *Hawkes Co. v. U.S. Army Corps of Engineers* that an agency's action is final under the second prong if a party's "rights or obligations" have been decided—for example, if the agency requires a party to "incur substantial compliance costs . . . , forego what they assert is lawful use of their property, or risk substantial enforcement penalties." 782 F.3d 994, 1000 (8th Cir. 2015), *aff'd*, 578 U.S. 590 (2016). And the Eighth Circuit has made clear that "[a]n agency does not inflict [legal] injury merely by expressing its view of the law." *Sisseton-Wahpeton Oyate of Lake Traverse v. U.S. Corps of Eng'rs*, 888 F.3d 906, 915 (8th Cir. 2018).

Here, NHTSA's Compliance Notification Letters will merely express the agency's view of the law and warn car dealerships about the consequences of non-compliance. Courts throughout the country are in accord that sending such letters does not amount to final agency action. *See, e.g., Holistic Candlers & Consumers Ass'n v. Food & Drug Admin.*, 664 F.3d 940, 944 (D.C. Cir. 2012) (holding that FDA warning letters about a product's noncompliance with the law did not constitute final agency action); *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 428 (D.C. Cir. 2004) (noting that "practical consequences, such as the threat of having to defend [oneself] in an administrative hearing should the agency actually decide to pursue enforcement, are insufficient to bring an agency's conduct under our purview"); *Schering–Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc.*, 586 F.3d 500, 505 (7th Cir. 2009) (determining that FDA's letters

9

advising a company that its product was misbranded (which could cause FDA to rescind the approval of sales) was "not final agency action"); *Clayton Cnty. v. FAA*, 887 F.3d 1262, 1266–67 (11th Cir. 2018) ("An agency's restatement of an already-existing policy or interpretation does not, on its own, determine any rights or obligations and imposes no legal consequences.").

Plaintiffs will suffer no *legal* consequence when the Compliance Notification Letters are sent. In other words, they will not incur compliance costs, enforcement penalties, or the loss of the use of any property once their customers receive the letters. The only consequence that Plaintiffs will suffer is a *practical* one. It is likely that sales of the Pulse Module will drop off substantially after the Compliance Notification Letters are sent—not because the dealerships are legally bound to do what the letters say, but because they are unlikely to challenge the agency and risk an enforcement action. Accordingly, the agency's actions here are not final and not subject to judicial review under the APA. As a result of this finding, Plaintiffs have failed to state a claim for declaratory and injunctive relief under the APA at 5 U.S.C. § 706(2). *See Reliable Automatic Sprinkler Co., Inc. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003) ("If there was no final agency action . . . there is no doubt that appellant would lack a cause of action under the APA.").[7]

---

[7] Though it need not analyze Plaintiffs' likelihood of success on the merits, the Court briefly notes that their arguments are unpersuasive. Plaintiffs insist that the Pulse Module is "steady burning" because it remains illuminated while pulsing (alternating from bright to dim rather than turning on and off) and because "the light output . . . always remains within the photometric requirements (i.e. the intensity of light) set forth in [Standard 108]." (Doc. 6, p. 8). But this explanation only addresses the "burning" requirement of Standard 108 and ignores the fact that the light must also be "steady." A pulsing light is not steady. Plaintiffs know this, which is why they have asked NHTSA to exempt the Pulse Module from Standard 108's unambiguous requirements. They have also lobbied members of

### III. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Preliminary Injunction (Doc. 5) is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED WITHOUT PREJUDICE**, *sua sponte*, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), in view of the Court's finding that the acts alleged in the Complaint (Doc. 2) do not constitute final agency action.

**IT IS SO ORDERED** on this 24th day of September, 2024.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

---

Congress to pass legislation to create an explicit statutory exemption for the Pulse Module. Perhaps Plaintiffs will succeed. After all, they point to several scientific studies indicating that a pulsing brake lamp is more effective at grabbing the attention of a distracted driver than a steady-burning brake lamp. Evidently, Plaintiffs' conflict with NHTSA is not about textual interpretation; it is about public policy, which is not for this Court to resolve.

11